IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DUSTY ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | CV-10-3041-PK |
| ) | |
| v. ) | OPINION AND ORDER |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

PAPAK, Magistrate Judge:

Plaintiff, Dusty Alexander, appeals the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). For the following reasons, the Commissioner's decision is affirmed.

1 - OPINION AND ORDER

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520, 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Alexander's ability to perform basic work activities limited by a combination of impairments, including fibromyalgia, migraines, depression, and anxiety. Admin. R. 28. At step three of the decision-making process, the ALJ found Alexander's impairments were not equivalent in severity to any of the presumptively disabling conditions listed in the regulations.

The ALJ found that, despite the effects of her impairments, Alexander retained the residual functional capacity ("RFC") to perform work at the medium level of exertion, with some limitation in postural activities such as climbing, balancing, and crawling. He found Alexander limited to simple tasks of no more than two steps at an unrushed pace, and she could have no direct contact with the public and only occasional contact with co-workers. *Id.* at 29.

For the purposes of step five of the decision-making process, the ALJ elicited testimony from a vocational expert ("VE") with hypothetical limitations based on this RFC assessment. *Id.* at 34, 395-97. The VE testified that a person with Alexander's RFC would be unable to perform the work she had done in the past, but could perform medium, unskilled occupations, such as janitor, hand packager, and laundry laborer. *Id.* at 35, 396-97. The ALJ concluded that Alexander had failed to prove she was disabled within the meaning of the Social Security Act. *Id.* at 35.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## DISCUSSION

### I. Claims of Error

Alexander contends the ALJ erred at step three of the decision-making process by failing to consider the combined effects of Alexander's impairments when determining whether her condition is equivalent in severity to any in the Listing of Impairments. Alexander contends the ALJ erred in assessing her RFC by improperly rejecting her subjective statements and the statements of medical sources. She contends the ALJ erred at step five by relying on testimony from the VE which was based on hypothetical assumptions that did not accurately reflect all of her impairments.

### II. Listing of Impairments

The regulations apply a conclusive presumption that the claimant is disabled if the claimant demonstrates that her condition is equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria necessary to establish the presumptively disabling impairments are enumerated at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). The claimant has the burden of proving that she meets or equals the criteria for a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); 20 C.F.R. §§ 404.1526, 416.926.

Alexander argues the ALJ did not properly evaluate the combined effects of her multiple impairments in determining that her condition was not equivalent in severity to any in the Listing of Impairments. The ALJ considered all the evidence Alexander presented with respect to her functional limitations. In doing so, he considered the functional effects of her combined impairments. Admin. R. 28-29. He compared the medical findings to the severity criteria for the

3 - OPINION AND ORDER

Listings involving impairments of the musculoskeletal system, impairments of the neurological system, and mental disorders. The ALJ concluded the medical findings were not equivalent to the criteria necessary to establish any Listing in those categories. *Id.* at 29.

Alexander failed to identify the specific Listing criteria she believes she satisfies or the specific medical evidence upon which she relies. To prevail on a step three argument, a claimant must proffer a plausible theory as to how her combined impairments meet or equal the criteria for a specific listed impairment. *Burch*, 400 F.3d at 683; *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Because Alexander has not done so, her challenge to step three of the ALJ's decision cannot be sustained. The ALJ's determination that Alexander failed to prove her impairments meet or equal a Listing was not erroneous.

## III.   RFC Assessment

Alexander contends the ALJ arrived at an inaccurate assessment of her RFC because he improperly rejected her subjective statements and discounted the opinions of two medical sources.

### A.   Credibility Determination.

Alexander alleged disability beginning January 28, 2005, due to fibromyalgia, borderline diabetes, chronic fatigue syndrome, migraine headaches, and depression. Admin. R. 99-100. She alleged these ailments cause weakness and fatigue, require her to take frequent breaks, and leave her unable to sit for any length of time. *Id.* at 100.

At the administrative hearing, Alexander's testimony suggested migraines were her primary impediment to employability. She testified that she gets three or four migraines per month. She takes Imitrex when she feels a migraine coming on. Imitrex is effective about 40 percent of the time, leaving her miserable, but able to move around the house and do a few things. The rest of the time,

she either does not get warning signs in time to take the medication or it does not work. Alexander tried prophylactic medications but they nauseated her. *Id.* at 369, 370, 373-74, 378.

Alexander testified she has chronic fatigue syndrome, which leaves her with body aches and fatigue similar to flu symptoms. *Id.* at 384-85. She testified she has irritable bowel syndrome which leaves her feeling nauseous. Even if she did not have migraines, she would not be able to work a regular schedule due to frequent nausea. *Id.* at 387.

At the time of the hearing, Alexander was in her third term of community college, taking twelve units each term and reportedly earning a 3.4 grade point average. She testified that she missed 61% of her classes, however, and was able to continue only because of an arrangement with the school permitting her to miss classes without affecting her grades. *Id.* at 362, 388.

The ALJ accepted that Alexander has migraines, fibromyalgia, and symptoms of depression and anxiety, which impose significant functional limitations reflected in the RFC assessment described previously. The ALJ found Alexander's statements about the severity, persistence, and functional impact of her impairments not credible to the extent they suggested functional limitations in excess of the RFC assessment. *Id.* at 29-31.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186.

Here, the ALJ found the objective medical evidence supported underlying impairments of migraines, fibromyalgia, depression, and anxiety, but did not support Alexander's allegations of

5 - OPINION AND ORDER

borderline diabetes, irritable bowel syndrome, and chronic fatigue syndrome. These factual findings are supported by substantial evidence. There is no diagnosis in the record of borderline diabetes or chronic fatigue syndrome. The only diagnosis of irritable bowel syndrome was a "presumed" or "probable" diagnosis provided by a physician's assistant based on Alexander's subjective assertions of constipation, diarrhea, and abdominal discomfort. Admin. R. 30, 31, 284, 286, 330. A physician's assistant is not an acceptable medical source, within the meaning of the Social Security Act, for the purpose of establishing the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513, 416.913.

With respect to the underlying impairments for which there is objective medical evidence, an ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing specific reasons for the credibility finding, supported by the evidence in the case record. SSR 96-7p, 1996 WL 374186, at *4. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995). In addition, an adverse credibility finding must be based on "clear and convincing reasons."[1] *Lingenfelter v. Astrue,* 504 F. 3d 1028, 1036 (9th Cir. 2007) quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

---

[1] The Ninth Circuit Court of Appeals states that where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which she complains, it has consistently held that an adverse credibility finding must be based on clear and convincing reasons. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283. The Commissioner argues that the Act does not authorize the court to demand a clear and convincing justification for such findings. 42 U.S.C. § 405(g). I do not need to resolve this controversy as I find that the ALJ reasons for the adverse credibility determination were, in fact, clear and convincing.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, the observations of agency employees having interactions with the claimant, and any other evidence that bears on the consistency and veracity of the claimant's statements. SSR 96-7p, 1996 WL 374186, at *5; *Smolen*, 80 F.3d at 1284.

The ALJ's decision reflects that he considered all the evidence in the case record regarding these factors in assessing Alexander's credibility. The objective medical evidence reflects a long history of benign examinations without significant findings, consistently accompanied by excessive subjective complaints. In November 2001, Alexander went to the emergency room for severe pelvic pain, but on distraction had a negative reaction to palpation of the affected area. Her examination and follow up were benign. Admin. R. 162, 190. In August 2002, Alexander complained of radiating pain and numbness in the left arm, which she attributed to a recent motor vehicle accident. Physical examination revealed no significant objective findings, neurologic signs, or evidence of myelopathy. *Id.* at 168. In an October 2002 follow up for the motor vehicle accident, Alexander complained of horrible constant pain in the neck, shoulder, and arm with arm weakness. On physical examination, her ranges of motion, gait, mental status, neurologic exam, plain x-rays, and MRIs of the shoulder and spine were normal. *Id.* at 171-75.

In January 2003, Alexander suggested she had fibromyalgia. David Gilmour, M.D., found multiple poorly localized trigger points and diagnosed possible fibromyalgia. *Id.* at 184-85. In September 2003, Alexander complained of severe low back pain with complete numbness and weakness of the left leg. Her examination was normal, except for mild tenderness to palpation in

the paraspinal muscles. She had a normal straight leg raise test and normal neurologic examination of the upper and lower extremities. *Id.* at 180. An MRI of the lumbar spine showed an old compression with minimal to mild signal change at L5-S1. *Id.* at 199.

In September 2004, Alexander presented Edward Helman, M.D., with a 5-page list of complaints, including fibromyalgia reportedly diagnosed in 1998 by an unidentified provider and depression. *Id.* at 236-37. In December 2004, Alexander told Dr. Helman her fibromyalgia pain and depressive symptoms were under control with medications. *Id.* at 233. Alexander alleged these same conditions were disabling only one month later.

In April 2005, Foy White-Chu, M.D., examined Alexander for a functional assessment. Alexander had exquisite tenderness during range of motion testing, but could ambulate painlessly when not under examination. She endorsed all fibromyalgia trigger points, but when distracted, pressure at the same points did not produce the same reaction. *Id.* at 204. The ALJ found this inconsistency supported an adverse inference as to the credibility of Alexander's subjective reporting and testing within her subjective control. *Id.* at 31. Dr. White-Chu did not report control point testing. Nevertheless, Dr. White-Chu apparently believed the diagnostic criteria for fibromyalgia were met. Even accepting the fibromyalgia diagnosis, however, Dr. White-Chu assessed Alexander with functional capabilities consistent with the RFC assessment ultimately reached by the ALJ. *Id.* at 205.

In June 2007, Alexander established care with Rebecca Vose, P.A., with complaints of fibromyalgia and migraine headaches, which were reportedly occurring at a frequency of seven per month. *Id.* at 292-93. In October 2007, Alexander raised the subject of irritable bowel syndrome, suggesting it could be the cause of her reported cycles of alternating constipation and diarrhea. Vose

8 - OPINION AND ORDER

told Alexander that irritable bowel syndrome was common with fibromyalgia, but she did not record clinical diagnostic findings. *Id.* at 284, 286.

In his review of the medical evidence, the ALJ pointed out instances in which Alexander overstated the severity of her medical history. For example, when Alexander established care with Vose, she said her medical history was significant for a crushed lumbar spine. *Id.* at 293. Alexander also told her live-in boyfriend that she had broken her back several years previously and could not comfortably sit in a regular chair. *Id.* at 392-93. In fact, as noted previously, examination of her lumbar spine with MRI showed only an old mild compression with minimal to mild signal change at L5-S1. *Id.* at 199. In another example, Alexander alleged impairment from borderline diabetes, but the record reflects only her own subjective report to Dr. Gilmour that she has a family history of diabetes mellitus. *Id.* at 190. In another, in June 2007, Alexander told Vose she had been diagnosed with fibromyalgia by Dr. Helman eight years previously. *Id.* at 293. In fact, the record includes no such diagnosis by Dr. Helman, but reflects that Alexander reported a past fibromyalgia diagnosis to him in 2004. *Id.* at 237. There are no records of the past fibromyalgia diagnosis. Nor do Dr. Helman's progress notes show trigger point testing that would support a fibromyalgia diagnosis; he apparently accepted Alexander's reported diagnosis and treated her subjective symptoms. At her last medical appointment before the alleged onset of disability, Alexander told Dr. Helman her fibromyalgia and depression were under control with medications. *Id.* at 233. Impairments that are controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ pointed out that all of Alexander's underlying impairments, fibromyalgia, migraines, depression, and anxiety, are treatable conditions with medications designed to alleviate

9 - OPINION AND ORDER

their symptoms. Admin. R. 31-32. Yet Alexander did not utilize those medication, and in instances where she tried them, did not appear motivated to overcome or tolerate the reported, relatively minor side effects. Instead, Alexander chose to rely primarily on marijuana. In September 2005, she was using only low-dose Flexeril, a muscle relaxing agent. *Id.* at 231. Her failure to try available treatments, such as prophylactic agents for migraines, supports an adverse inference as to the credibility of her claims about the severity of the symptoms. *Id.* at 32.

The ALJ found Alexander's reporting about her migraine symptoms inconsistent. Initially, Alexander told treating sources her migraines occurred in a consistent pattern of onset, duration, and symptoms. *Id.* at 161. Alexander told Dr. White-Chu, however, that her migraines had no specific pattern. *Id.* at 202. In January 2001, Alexander received emergency treatment with Imitrex for a migraine. She reported it did not reduce the pain. *Id.* at 162. At a follow up with Dr. Gilmour, she reported the Imitrex had worked well. *Id.* at 190. The medical records do not reflect any mention of migraines again until October 2004, when Alexander told Dr. Helman they were a chronic problem. *Id.* at 235. In June 2007, Alexander told Vose she was having up to seven migraines per month, but the medical records do not reflect contemporaneous reports of any migraines to treating sources, other than the emergency visit in January 2001. *Id.* at 293. The ALJ could reasonably conclude that a patient suffering the debilitating symptoms associated with uncontrolled migraines as frequently as Alexander alleged would seek treatment or at least mention the episodes to treating sources. *Id.* at 32. In addition, Alexander did not use available prophylactic medications and homeopathic agents, trying only one and rejecting it after a brief trial because it nauseated her. *Id.* at 291. It is reasonable for the ALJ to expect that Alexander would have tried available prophylactics and would have tried harder to overcome or tolerate the side effects of the one she

10 - OPINION AND ORDER

tried, if she were suffering uncontrolled migraines with the frequency and severity that she claimed. *Id.* at 32.

The ALJ concluded from his review of the medical evidence and Alexander's subjective reports that she has a tendency to exaggerate her symptoms. *Id.* at 29-30. This conclusion flows logically from the record as a whole and supports an adverse inference as to the credibility of Alexander's assertions.

The ALJ also found Alexander's reported daily activities inconsistent with her assertions of debilitating symptoms. *Id.* at 33. For example, Alexander completed three consecutive terms of full-time college courses and is able to perform household chores and minor repairs, shop, drive, play board games, do crafts, read, watch movies, do pilates, and use a computer. These activities are not equivalent to full-time competitive work. Nor are they entirely consistent with the extreme physical and mental impairments Alexander claims, however. Taken together with the record as a whole, these activities suggest Alexander is not as limited as she alleges.

In summary, the ALJ considered all the available evidence relating to the proper factors for assessing credibility. Taken as a whole, his explanation is clear and convincing and his factual findings are supported by inferences reasonably drawn from substantial evidence in the record. Alexander urges the court to accept a different interpretation of the evidence, but the ALJ was in a better position to evaluate her credibility. Even if the evidence could rationally be interpreted in a manner more favorable to Alexander, the court must defer to the Commissioner's rational findings of fact. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995). The ALJ's decision provides an adequate basis for the court to conclude that he did

not discredit Alexander's subjective statements arbitrarily. *Orteza*, 50 F.3d at 750; SSR 96-7p. Accordingly, the credibility determination is upheld.

### B. Medical Source Statements

Alexander contends the ALJ improperly discounted the medical source statements of Dr. Helman and physician assistant Vose, and substituted his own independent medical conclusions in their place.

The case record includes progress notes from Dr. Helman showing he saw Alexander once in 1994 for an upper respiratory infection, once in 1996 for a back strain, and once in 1999 for migraine symptoms. Admin. R. 239. He saw Alexander about once a month between August 2004 and February 2005. *Id.* at 233-38. After a seven-month hiatus, Alexander returned to Dr. Helman for the last time on September 16, 2005, to obtain a disability opinion letter. *Id.* at 231-32.

Dr. Helman's letter indicated that Alexander suffered from severe fibromyalgia, migraine headaches, nausea, and vomiting. Dr. Helman opined that Alexander was "unable to maintain full-time gainful employment because of her pain symptoms and headaches . . . I feel she may not return to full-time gainful employment considering the severity of her disease." *Id.* at 232. The ALJ found Dr. Helman's opinion entitled to little weight in the disability determination. *Id.* at 31-32.

An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002), quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.* Here the ALJ gave greater weight to the findings and opinion

of Dr. White-Chu and the agency's reviewing medical experts. Accordingly, the court reviews for specific, legitimate reasons based on substantial evidence.

Dr. Helman's letter did not identify specific functional limitations resulting from Alexander's fibromyalgia and headaches. He did not identify specific work related activities Alexander could not perform. Accordingly, the ALJ's RFC assessment did not directly contradict or reject any part of Dr. Helman's opinion except his conclusion that Alexander cannot work. That question, whether a claimant is capable of work, is not a medical opinion about specific functional limitations, but an administrative finding requiring vocational information and expertise a physician does not possess. The regulations reserve such questions to the Commissioner. Opinions on issues reserved to the Commissioner cannot be given controlling weight or special significance, even when offered by a treating physician. 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ may not ignore such opinions, and here, the ALJ did not. *Reddick v. Chater*, 157 F.3d, 715, 725 (9th Cir. 1998); SSR 96-5p, 1996 WL 374183, *2-3.

The ALJ observed that Dr. Helman had not examined Alexander in seven months when he issued his opinion letter. Admin. R. 31. The progress notes reflect that Alexander's purpose in seeing Dr. Helman for the first time in seven months was not for treatment, but because she "need[ed] a letter for attorney." *Id.* at 231. The only treatment Alexander was receiving at the time of this visit was Flexeril for muscle spasms, although her allegedly disabling impairments are treatable conditions.

The ALJ correctly observed that Dr. Helman's opinion appears to be taken directly from the subjective reports recorded in his progress notes. *Id.* at 31. The subjective section of Dr. Helman's progress notes is comprised of Alexander's statements about her inability to work and her financial

13 - OPINION AND ORDER

struggles. There is no record that Dr. Helman performed objective testing or made clinical findings supporting his opinion. An ALJ need not accept a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). The ALJ's conclusion that Dr. Helman premised his opinion primarily on Alexander's subjective description of her symptoms and her difficulty attempting to work flows logically from these circumstances. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir 2001).

In the absence of objective findings by Dr. Helman regarding specific functional limitations, the ALJ reasonably relied on the report of Dr. White-Chu, who did make such findings based on clinical tests and observations. *Id.* at 31. Accordingly, the ALJ did not improperly discount Dr. Helman's opinion.

In June 2007, Alexander established care with Vose, giving a subjective medical history of fibromyalgia and migraines reportedly diagnosed many years earlier, restless leg syndrome, and a crushed lumbar spine injury. *Id.* at 293. Vose did not order medical records or perform clinical evaluations to confirm these diagnoses. She prescribed a prophylactic medication for migraines and observed that Alexander was very knowledgeable about fibromyalgia through self-study and was "doing everything that is recommended by fibromyalgia expert." *Id.* at 292. At her next office visit, Alexander had discontinued the prophylactic migraine medication after a brief trial. Vose advised Alexander that other prophylactic agents were available, but Alexander did not want to take any daily medication for migraines. *Id.* at 291. Vose declined Alexander's request for narcotics to treat fibromyalgia pain, but prescribed Neurontin, which Alexander had never tried in the past. *Id.* at 289.

Alexander later reported the Neurontin "helped her tremendously." *Id.* at 288. In October 2007, Alexander reported being constipated for days followed by diarrhea with gas pain and distension with a diagnosis of presumed irritable bowel syndrome. *Id.* at 286. It is not clear whether this was a self diagnosis by Alexander or Alexander was reporting an earlier diagnosis by another provider or Vose reached this diagnosis based on Alexander's subjective symptoms. *Id.* In any event, Vose educated Alexander that irritable bowel syndrome was very common with fibromyalgia. *Id.* at 284. Alexander reported getting good relief from fibromyalgia symptoms from Flexeril and Neurontin, but continued to complain of abdominal and flank pain. *Id.* at 330, 339.

In April 2008, Vose completed a functional capacity questionnaire indicating Alexander had classic migraines lasting 12 to 24 hours and occurring with a frequency of about two to four per month, with periods in which she had as many as eight in a month. Vose indicated that no objective testing had been done, suggesting MRIs, CTs, and EEGs had not been ordered due to lack of insurance. In this respect, it is notable that lack of insurance did not prevent Alexander from having a CT scan for abdominal pain on February 28, 2008. *Id.* at 330. Vose opined that Alexander would be unable to work, even at low stress jobs, while having a migraine. She estimated Alexander would be absent from work about four times a month. Vose said Alexander could not do jobs involving physical activity due to severe fibromyalgia. *Id.* at 310-15.

The ALJ did not give Vose's opinion significant weight in his decision. *Id.* at 33. The ALJ observed that Vose relied heavily on Alexander's subjective reporting as the basis of her opinion. *Id.* This conclusion is supported by substantial evidence. Vose accepted at face value Alexander's subjective history of a crushed lumbar spine, diagnoses of irritable bowel syndrome and fibromyalgia, and past trials of prophylaxis for migraines. Vose's progress notes do not indicate any

15 - OPINION AND ORDER

objective testing, clinical findings, or review of records to confirm Alexander's subjective history. Instead, the progress notes are comprised of Alexander's subjective reports and treatment recommendations for her subjective symptoms. Opinions that are premised primarily on the subjective reports of the claimant are no more credible than the subjective reports themselves. The ALJ was entitled to give little weight to an opinion premised on subjective statements he found unreliable. *Tonapetyan*, 242 F.3d at 1149.

## IV.   Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 U.S at 141-42; 20 C.F.R.§§ 404.1520(e), (f), 416.920(e), (f). The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F.3d at 1043. Here the ALJ elicited testimony based on Alexander's RFC assessment, and the VE opined that jobs exist in medium, unskilled occupations, such as janitor, hand packager, and laundry laborer. *Id.* at 35, 396-97.

Alexander contends the ALJ's hypothetical assumptions did not reflect all of her functional limitations. Specifically, she contends the ALJ failed to reflect that she would be absent from work three to four times per month as indicated by Vose. The ALJ properly discounted Vose's opinion in favor of the opinions of Dr. White-Chu and the reviewing medical experts. The ALJ was not required to incorporate hypothetical assumptions based on properly discounted evidence or accept vocational testimony based on properly discounted evidence. *Batson*, 359 F.3d at 1197-98; *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Accordingly, the VE's testimony

provided substantial evidence from which the ALJ could properly conclude that jobs exist in the national economy that a person with Alexander's RFC could perform.

## **ORDER**

For the foregoing reasons, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 5th day of July, 2011.

_____
Paul Papak
United States Magistrate Judge